**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1013-17T3

IN THE MATTER OF THE
APPEAL FOR THE DENIAL
OF A PERMIT TO PURCHASE
A HANDGUN OF D.A.

_____

Submitted February 25, 2019 – Decided March 11, 2019

Before Judges Haas and Sumners.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County.

Evan F. Nappen, PC, attorneys for appellant Daniel Anderson (Louis P. Nappen, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent State of New Jersey (Lisa Sarnoff Gochman, of counsel and on the brief).

PER CURIAM

Appellant D.A. appeals from the September 22, 2017 Law Division order upholding a municipal police chief's denial of his application for a New Jersey Firearms Purchaser Identification Card (FPIC) and a handgun purchase permit. We affirm.

Appellant filed his application on June 26, 2014. As part of his application, appellant completed the Consent for Mental Health Records Search form required by the State Police. Chief of Police R. Craig Weber assigned Detective Anthony Dellatacoma to conduct appellant's background investigation.

During his investigation, Detective Dellatacoma obtained appellant's school and available psychological records. These records revealed that in 1999, when appellant was eight years old, he threatened to kill his teacher, other students, and the school principal. A police officer was called to the school and, while he and appellant were in the school nurse's office, appellant lunged for the officer's firearm, and grabbed it by the handle. The officer had to pry appellant's hand off of the weapon. The officer also learned that appellant had bitten a teacher on a prior occasion. The police did not take appellant into custody, and did not file any juvenile charges against him.

In 2005, appellant engaged in a fight in a high school classroom. The charges were referred to a juvenile referee for disposition, and appellant successfully completed a diversionary program.

While he was in high school, a psychologist prepared a written evaluation of appellant as part of his Individualized Education Plan, which classified

appellant as "Other Health Impaired." The psychologist reported that appellant was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and Intermittent Explosive Disorder in 1998. A 1999 evaluation revealed that appellant suffered from severe ADHD, Expressive Language Disorder, and early Bipolar Disorder or a primary thought disorder. The report stated that appellant was "At Risk" in three areas: (1) Attitude to Teachers; (2) Sensation Seeking; and (3) Hyperactivity. Appellant reported "a preference for engaging in behaviors that are generally considered by others as risky, and can be hazardous," and revealed that he engaged "in a number of restless and disruptive behaviors."

In January 2012, appellant was working as a vacuum cleaner salesperson. He refused to leave a customer's home after a scheduled appointment, and the customer had to call the police to get him to end the sales call.

While appellant's application was pending, appellant went to the police station and spoke to an officer about an unregistered, uninsured car he was keeping on his property that he hoped to restore.[1] During that conversation, appellant asked the officer whether it was legal to paint a large hand with the middle finger sticking up on the car because he hated his neighbors and wanted

---

[1] Chief Weber had given appellant six months to make the necessary repairs.

A-1013-17T3

to express his frustration with them for having lodged a complaint with the police about the car. Appellant later claimed that he made this inquiry as a joke.

Based upon this "series of disturbing antisocial behavior," Chief Weber concluded that granting appellant a FPIC and a handgun purchase permit "would not be in the interest of the public health, safety or welfare" under N.J.S.A. 2C:58-3(c)(5). Appellant filed an appeal to the Law Division, and the trial judge conducted a de novo hearing at which Chief Weber and appellant testified.

In preparation for the hearing, appellant conferred with a psychologist, who prepared a report in which she concluded that appellant "has no psychiatric disorders at this time." As part of her evaluation, however, the psychologist did not review any of appellant's prior psychological reports or records. Instead, the report was based solely on information appellant self-reported to the psychologist. As Chief Weber noted in his testimony, appellant failed to disclose the incident at the customer's home to the psychologist, and glossed over the school incidents, where he bit a teacher, threatened to kill students, and attempted to grab a police officer's firearm.[2]

---

[2]  The Chief also testified that after appellant filed his application, two of appellant's siblings, who lived in their parents' home with him, were arrested for possession and distribution of controlled dangerous substances that were found in the home.

At the conclusion of the hearing, the judge rendered a thorough written opinion and found that in light of appellant's past behavior, giving appellant a FPIC and a handgun permit "would not be in the interest of the public health, safety or welfare" under N.J.S.A. 2C:58-3(c)(5). The judge explained:

> Here, [appellant] has been diagnosed with several mental health disorders. A psychological evaluation revealed that [appellant] reported "a preference for engaging in behaviors that are generally considered by others as risky, and can be hazardous." [Appellant] also revealed that he engages "in a number of restless and disruptive behaviors." At eight-years-old, [appellant] threatened to kill his teacher, other students, and the school principal. [Appellant] also firmly grabbed the handle of a police officer's firearm while in the school nurse's office. At [fourteen] years old, [appellant] engaged in a fight with a classmate, leading to a complaint being filed against him. Most recently, [appellant] was involved in an incident at a client's home resulting in police responding to the scene.
>
> Although [the psychologist who prepared a post-application report for appellant] noted in her report on June 15, 2017 that in her opinion [appellant] does not have a psychiatric disorder, she did not have available to her any of [appellant's] past mental health records. [Appellant] has shown a propensity to engage in questionable behavior. As recently as June 15, 2017, [appellant] asked a police officer if he could paint a large middle finger on a vehicle because he hates his neighbors. Although [appellant] has not been involved in any violent incidents since a fight in high school, the presence of a firearm enhances the potential that [appellant's] behavior could result in a lethal incident. Based on [appellant's] mental health diagnoses and his

5

past behavior, the [c]ourt finds that issuing a permit to [appellant] would put the public health, safety, and welfare at risk.

This appeal followed.

On appeal, appellant raises the following contentions:

POINT 1

THE COURT BELOW ERRED BECAUSE ISSUANCE OF FIREARM PURCHASE PERMITS ARE BASED ON PRESENT CONDITION, AND APPELLANT HAS NO PRESENT DISQUALIFYING CONDITION.

POINT 2

IT REMAIN[S] UNREBUTTED THAT APPELLANT HAS NO PRESENT MENTAL HEALTH ISSUE, AND THE COURT BELOW ERRED BY SUBSTITUTING ITS OWN OPINION FOR THAT OF THE MENTAL HEALTH PROFESSIONAL.

POINT 3

APPELLANT WAS DENIED DUE PROCESS IN OFFENSE TO N.J.S.A. 2C:58-3(f) AND IN RE FIREARMS PURCHASER ID BY Z.K. (Not raised below).

POINT 4

THE COURT BELOW ERRED BY DENYING APPELLANT HIS SECOND AMENDMENT RIGHTS BECAUSE HE INQUIRED ABOUT HIS FIRST AMENDMENT RIGHTS OR EXERCISED HIS FIRST AMENDMENT RIGHTS.

A-1013-17T3

POINT 5

THE COURT BELOW ERRED IN FINDING THAT
THIS APPLICATION DOES NOT CONCERN THE
SECOND AMENDMENT, AND APPELLANT
SHOULD NOT BE DENIED HIS FUNDAMENTAL,
INDIVIDUAL, CONSTITUTIONAL RIGHT TO
KEEP ARMS FOR A REASON THAT DOES NOT
RISE ABOVE RATIONAL BASIS, IS VAGUE
AND/OR OVERBROAD, CONSTITUTES AN
UNCONSTITUTIONAL BALANCING-TEST, AND
DOES NOT PROVIDE A DUE PROCESS FORM OF
REDRESS.

a.    The Court below erred by not basing its finding
      upon a longstanding prohibition on the
      possession of firearms, and by applying mere
      rational basis review to deny appellant his
      individual, fundamental right.

b.    "In the interest of public health, safety or
      welfare" is unconstitutionally vague or
      overbroad.

c.    "In the interest of public health, safety or
      welfare" provides unconstitutional Due Process
      notice and provides no Due Process form of
      redress.  (Not raised below).

d.    "In the interest of public health, safety or
      welfare" does not pass heightened scrutiny
      generally and as applied below as it constitutes a
      mere unconstitutional interest-balancing test.

    A-1013-17T3

We conclude that appellant's contentions are without sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E).[3] Therefore, we affirm substantially for the reasons set forth in the trial judge's comprehensive written decision. We add the following comments.

We are bound to accept the trial court's fact findings if they are supported by substantial credible evidence. In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997). However, we exercise de novo review over the trial court's legal determinations. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

N.J.S.A. 2C:58-3(c) directs the issuance of a permit to purchase a handgun and a FPIC to any person of "good character and good repute" who is not subject to any of the enumerated exceptions. The statute provides that "[n]o handgun purchase permit or [FPIC] shall be issued: . . . [t]o any person where the issuance would not be in the interest of the public health, safety or welfare." N.J.S.A. 2C:58-3(c)(5).

"[T]he statutory design is to prevent firearms from coming into the hands of persons likely to pose a danger to the public." State v. Cunningham, 186 N.J.

_____

[3] In Point Six of his brief, appellant also requests that we use initials to refer to appellant in this opinion. We do so as a matter of course in matters of this nature.

Super. 502, 511 (App. Div. 1982). The broad catch-all provision of section (5) relates "to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest." In re Osworth, 365 N.J. Super. 72, 79 (App. Div. 2003) (quoting Burton v. Sills, 53 N.J. 86, 91 (1968)).

Applying these standards, we are satisfied that the judge's findings were based upon appellant's undisputed past questionable behavior as revealed by the standard background check, and the testimony presented at the de novo hearing. Therefore, we decline to second-guess the judge's conclusion that granting appellant's application "would not be in the interest of the public health, safety or welfare." N.J.S.A. 2C:58-3(c)(5).

We also reject appellant's argument that the judge erred by substituting his own opinion for that of the psychologist who prepared the March 2017 report. Contrary to appellant's contention, the judge was not required to blindly accept the psychologist's opinion, especially in light of her failure to review any of appellant's records, and appellant's own decision to downplay his past incidents of questionable behavior in his statements to the psychologist. See Brown v. Brown, 348 N.J. Super. 466, 478 (App. Div. 2002) (noting that "[a]

9

trial court is free to accept or reject the testimony of either side's expert," in full or in part).

Finally, we conclude that appellant's constitutional arguments are meritless, noting our discussion in In re Winston, 438 N.J. Super. 1, 10 (App. Div. 2014). See also In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 506-08 (2016) (explaining the limitations on the right to possess firearms).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1013-17T3